CONFEDERATED TRIBES AND BANDS OF the YAKIMA INDIAN NATION, et al., Plaintiffs,

v.

Malcolm BALDRIGE, et al., Defendants.

No. 80–342.

United States District Court, W.D. Washington.

March 7, 1985.

Phillip E. Katzen, Seattle, Wash., for Jamestown, Port Gamble and Lower Elwha Bands of Klallam Indians, Muckleshoot, Nisqually, Nooksack, Sauk-Suiattle, Skokomish, Suquamish, Squaxin Island, Stillaguamish Tribes, Swinomish Tribal Community and Upper Skagit Tribe.

Mason D. Morisset, Seattle, Wash., for Makah and Tulalip Tribes.

Richard Reich, Auburn, Wash., for Quinault Indian Nation.

Robert C. Strom, Craigmont, Idaho, for Nez Perce Tribe.

Timothy Weaver, Yakima, Wash., for Confederated Tribes and Bands of the Yakima Indian Nation.

Susan Kay Hvalsoe, Bellevue, Wash., for Hoh, Quileute and Nisqually Tribes.

Howard Arnett, Bend, Or., for Confederated Tribes of the Warm Springs Reservation of Oregon.

Daniel A. Raas, Bellingham, Wash., for Lummi Indian Tribe.

Catherine Wilson, Pendleton, Or., for Confederated Tribes of the Umatilla Indian Reservation.

John Howard Bell, Tacoma, Wash., for Puyallup Tribe.

Sarah Elizabeth McCracken, Asst. Atty. Gen. of Alaska, Anchorage, Alaska.

Donald A. Carr, Atty., Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C.

George D. Dysart, Sp. Asst. U.S. Atty., Portland, Or.

Mary Deits, Asst. Atty. Gen., State of Oregon, Salem, Or.

Thomas F. Carr, Sr. Asst. Atty. Gen., State of Washington, Olympia, Wash.

## STIPULATION AND ORDER

CRAIG, District Judge.

This stipulation is entered into by all parties to this proceeding for the purpose of defining a procedure and standards by which the parties agree to determine the allocation of certain chinook salmon resources between fisheries in and off the state of Alaska and fisheries in and off the states of Washington and Oregon.

The parties hereto are the United States, the states of Washington and Oregon, the twenty-four Indian tribes identified on the signature pages hereto whose fishing rights are secured by treaties entered into between the United States and the respective tribes in the mid-1850's (Stevens and Palmer Treaties), and the State of Alaska. This stipulation is intended to establish a mechanism which will permit the parties to address chinook salmon allocation issues in the cooperative spirit necessary for effective interjurisdictional coordination of management and to avoid the need to litigate the legal and factual issues raised by the parties in this case concerning fisheries in and adjacent to Alaska.

The following represents the full agreement of the parties and the terms by which they will abide for the duration of this stipulation.

I. *Purposes.* The purposes of this agreement and stipulation are:

A. To promote ratification and effective implementation of the U.S./Canada Pacific Salmon Treaty signed at Ottawa January 28, 1985;

B. To provide, with respect to Alaska chinook fisheries, for satisfaction of United States' obligations, if any, to the tribes under the Stevens and Palmer Treaties;

C. To provide for a resolution of the dispute between Alaska and the other parties as to Alaska's role, if any, in the satisfaction of the United States' obligations under these treaties;

D. To provide for a fair interstate domestic allocation of chinook salmon resources originating in Washington, Oregon and Idaho and migrating to waters in and adjacent to Alaska.

II. *Agreed Statements.* The parties agree to the following statement of facts relevant to this stipulation:

A. There exist treaties entered into force in the mid-1850's between the United States and certain Pacific Northwest Indian tribes in which the tribes reserve the right to take fish at their usual and accustomed places.

B. There exists a dispute between Alaska and the other parties concerning whether Alaska has an obligation to limit its harvest of far north migrating salmon stocks.

C. The parties have a common interest in the wise management, enhancement, and

fair division of the chinook salmon resources subject to this agreement.

D. A treaty between the United States and Canada concerning Pacific Salmon has been signed which if implemented will be mutually beneficial to all parties.

III. *Definitions.* The following definitions govern the use of terms in this stipulation:

A. The fish stocks referred to in this stipulation are chinook salmon resources originating in Washington, Oregon and Idaho and migrating in significant numbers to waters in or adjacent to Alaska.

B. The term North/South allocation, as used in this stipulation, means the allocation of the chinook stocks subject to this stipulation between fisheries managed by Alaska and the United States in and adjacent to Alaska on the one hand (collectively "North"), and fisheries managed by Washington, Oregon, the Stevens and Palmer Treaty Tribes and the United States in and adjacent to Washington and Oregon on the other hand (collectively "South").

IV. *North/South Allocation.* While the U.S.-Canada Pacific Salmon Treaty and this stipulation are in force, obligations of Alaska and the United States for fisheries in or adjacent to Alaska, if any, under the Stevens and Palmer Treaties concerning North/South allocation of chinook salmon shall be deemed satisfied, provided that this section shall not be construed as modifying or otherwise limiting the remedies of any party to enforce this stipulation pursuant to Paragraph V C, below. The mechanism and standards by which the parties shall determine North/South allocation of chinook salmon stocks subject to this stipulation are:

A. *Mechanism.* The parties agree that North/South allocation determinations shall be made by the U.S. Section of the Pacific Salmon Commission. Decisions of the U.S. Section of the Commission with respect to North/South allocations shall be made only by unanimous vote of the voting members thereof.

B. *Allocation During Rebuilding.* During the joint U.S.-Canada chinook rebuilding program, the North/South allocations shall be made by the Pacific Salmon Commission under the terms of the Pacific Salmon Treaty.

C. *Allocation After Rebuilding is Complete.* Following the chinook rebuilding period, the U.S. Section of the Pacific Salmon Commission shall make North/South allocation determinations which shall account for and consider the following:

1. The total cumulative impact of all fisheries' activities upon the stocks subject to this stipulation.

2. The contributions of each party to conserving, rebuilding, and enhancing chinook salmon stocks.

3. The contributions and investments of each party in the resource, including spawning, production, growth and survival of chinook salmon stocks.

4. The cultural, social, and economic dependence of each party on chinook salmon stocks.

5. The history of participation by each party in the chinook fisheries.

6. The establishment of fishery regimes to maintain the stocks at optimum productivity and provide fair internal allocation.

7. A sharing of benefits of coastwide rebuilding and enhancement.

8. The obligation to insure that Indian treaty fishing rights under the Stevens and Palmer Treaties are satisfied.

D. *Commission Decisions.* The U.S. Section of the Pacific Salmon Commission shall make good faith efforts to insure that decisions made by the Commission are consistent with the provisions of Paragraphs IV B and C, above.

V. *Agreement Not to Sue/Dispute Resolution.*

A. Each party agrees to be bound by the provisions of Section IV of this stipulation governing allocation, including the unanimous allocation determinations by the voting members of the U.S. Section of the

Pacific Salmon Commission regarding the North/South allocations. Except only as provided in Paragraph V C below, each party covenants not to bring any suit arising from, relating to or in any way challenging this stipulation or its implementation, including but not limited to the dispute resolution provision in Paragraph V B, below.

B. This stipulation by the parties shall be given force and effect through the voting members of the U.S. Section beginning at the end of the chinook rebuilding period specified in Chapter 3, Annex IV of the Pacific Salmon Treaty. In the event the U.S. Section fails to make the determinations required under Paragraph IV C by February 1 of each year or another date set by the U.S. Section, until such determinations are made there shall be no chinook fishery or retention of any chinook caught by any party except: (1) as authorized by the U.S. Section; or (2) as caught incidentally in net fisheries for other species not exceeding the percentage of chinook in the total catch taken in those fisheries in the previous year. The following fisheries, however, are exempted from the fisheries which will close under this paragraph:

(a) all fisheries exclusively for non-commercial tribal ceremonial and subsistence and Alaska traditional subsistence purposes;

(b) Puget Sound (defined as all waters east of the Bonilla Point—Tatoosh head line) commercial net and commercial troll fisheries for chinook in the same locations and with similar characteristics to those which existed in 1984;

(c) fisheries on upriver Columbia River spring chinook;

(d) fisheries south of Cape Falcon, except those which target on far north migrating stocks; and

(e) all fisheries in or adjacent to Alaska west or north of Cape Suckling, except commercial troll fisheries which harvest far north migrating stocks.

For purposes of the allocation determinations required by paragraphs IV A and C of this stipulation and order, the decision of the treaty Indian commissioner shall be determined by consensus of the four Columbia River treaty Indian tribes and the three Quinault treaty area tribes, in consultation with the Makah Tribe.

In 1995, and every five years thereafter, the U.S. Section shall reevaluate this provision, including the date by which agreement must be reached and the balance of political and fishery equities provided under this paragraph, and shall make such adjustments to the date and the fisheries identified in subparagraphs (a) through (e) above as are appropriate to ensure that decisions may be made with the necessary management information and that the balance of equities necessary to achieve consensus is preserved; provided that no fishery shall be added to or deleted from the exceptions identified in (a) through (e) above unless all parties to this stipulation concur.

C. In the event any party fails or refuses to abide by the fishing regimes developed under Section IV of this stipulation, or, in the event there is no agreement and the fishery closures and restrictions provided under Paragraph V B of this stipulation are imposed and any party conducts a fishery in violation of Paragraph V B, any of the other parties shall have recourse to this court to compel compliance with and enforce the regimes of Section IV and Paragraph V B as provided under this stipulation.

D. In exchange for the parties' agreement to abide by the terms and provisions of this stipulation, each party agrees to support ratification and effective implementation of the Pacific Salmon Treaty.

VI. *Terms of Implementation and Termination.*

A. The parties stipulate to the execution of this agreement by its entry as an order of this court.

B. This stipulation shall become effective upon entry into force by the governments of Canada and the United States of the Pacific Salmon Treaty.

 

C. This agreement shall not affect the extent to and manner in which salmon stocks subject to this agreement are counted and considered in treaty—non-treaty allocations under the cases *United States v. Washington*, No. 9213 and *United States v. Oregon*, No. 68–513 (D.Ore.), nor does it affect any party's position in these two cases. The treaty tribes, the United States, and the States of Washington and Oregon, hereby reaffirm and express their firm commitment to negotiate in good faith to settle, by mutual agreement, the management issues and principles in those cases concerning treaty—non-treaty allocations. The parties further recognize that this stipulation and the Pacific Salmon Treaty will provide additional fish to facilitate a resolution of such treaty—non-treaty allocation issues in a manner that is beneficial to each of the parties to *United States v. Washington, supra,* and *United States v. Oregon, supra.*

D. This stipulation shall become null and void if the Pacific Salmon Treaty is terminated by either the Government of Canada or the United States, and this order shall be vacated by the court upon submission by any party of evidence of the termination of the Pacific Salmon Treaty.

E. This stipulation and order can be modified or rescinded only in the above captioned case and only by the mutual written consent of all parties.

F. This court retains continuing jurisdiction in this case as to this stipulation only for the purpose of enforcing this stipulation, and for no other purpose. This order shall not affect the claims in this case that are unrelated to the management of fisheries in or adjacent to Alaska.

G. The Alaska defendants are dismissed from this action without prejudice except for purposes of enforcing this stipulation as provided in Paragraph V C above.

H. Permission is granted for the Jamestown, Port Gamble and Lower Elwha Bands of Klallam Indians, Muckleshoot, Nisqually, Nooksack, Sauk-Suiattle, Skokomish, Suquamish, Squaxin Island, Stillaguamish Tribes, Swinomish Indian Community, Upper Skagit, Hoh, Lummi, Quileute, Makah, Puyallup and Tulalip Tribes, and the Quinault Indian Nation, to intervene in the above captioned case for the express and limited purposes of entry, enforcement, modification or rescission of this stipulation and order.